[Cite as *State v. Burns*, 2012-Ohio-4706.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-37 |
| ROBERT L. BURNS, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal appeal from the Licking County
                            Court of Common Pleas, Case No.
                            12CR00116

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     October 9, 2012

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

CHRISTOPHER REAMER                  WILLIAM CRAMER
Licking County Prosecutor           4932 Killarney Court
125 Balbriggan Lane                 Westerville, OH  43082
Granville, OH 43023

*Gwin, P.J.*

{¶1}   Appellant Robert L. Burns, Jr. ["Burns"] appeals his convictions after a jury trial of three counts of illegal use of a minor in nudity-oriented performance, three counts of corruption of a minor and one count of corrupting another with drugs. Appellee is the State of Ohio.

*FACTS AND PROCEDURAL HISTORY*

**A. Use of a Minor in a Nudity Oriented Performance.**

{¶2}   Three images of a nude juvenile ("J.W.") were presented in connection with three counts that alleged violations of illegal use of a minor in nudity-oriented performance. Two of the images were Polaroid camera photographs of a fully nude J. W. posing in Burns' bedroom. The third photograph was recovered from a zip disc seized from Burns'' bedroom by police during the search warrant and later analyzed by the Ohio Bureau of Criminal Investigation. ["BCI"].

{¶3}   J.W. confirmed that Burns had both a computer camera and Polaroid camera in his bedroom. Burns had requested J.W. to perform on the Internet and engage in sexual activity with him. While performing J.W. could view her own image on Burns' computer screen. J.W. identified all three nude images as her in 1999 and as having been taken in Burns' bedroom. J.W. also identified three other witnesses to Burns' behavior: his son, Ashlin O'Neal; his wife, Vicky Faye (fka Vicky Burns); and a friend, Oneida Roseberry.

{¶4}   Diamond Boggs, computer forensic analyst with B.C.I. found a single nude image of J.W. on a zip disk recovered from Burns' bedroom. Boggs stated that where she recovered the image was not a default location and someone would have physically

transferred it to that location. Boggs also found evidence of video streaming software on Burns' computer.

**{¶5}** Burns' cousin, Donna Glover, stated that in 1999 Burns dropped off his son, Ashlin O'Neal, at her home in Columbus. Burns told Glover that he was leaving O'Neal with her because O'Neal had been accused of taking nude photographs of a fourteen-year-old female and his biological mother was abusing O'Neal.

**{¶6}** Oneida Roseberry, Woods' friend, confirmed that she was present in Burns' bedroom with J.W. in 1999 and observed a computer camera. Burns asked J.W. and Roseberry to perform on the Internet. J.W. did perform and took off her top.

**{¶7}** Faye, Burns' ex-wife, confirmed that a computer camera and Polaroid camera were present in the bedroom. She further confirmed Burns was the most knowledgeable household member concerning operation of computers.

**{¶8}** Burns' daughter, Alyssa Burns, confirmed the family had a Polaroid camera and that Burns was the most computer savvy individual in the home. She also testified regarding a recorded conversation she had with Burns when he was being held at the Licking County jail. During the recording, which was played for the jury, Burns stated he had fled and lived in Mexico for the past decade; placed blame on J.W., stating J.W. had constantly walked around his home naked; and reported that the entire case was a set up by his former employer, the Newark police, his brother, his wife and J.W.

**{¶9}** Two members of the Newark Police Department, Timothy Elliget and William Hatfield, confirmed that unrelated Polaroid photographs, a computer camera

and the zip drive were recovered during execution of the search warrant at Burns' residence in 1999.

{¶10} Detective Kenneth Ballantine, lead detective on the case, interviewed Burns after his arrest on March 18, 1999. Burns claimed during the interview that the nude photographs of J.W. were taken for her boyfriend. Prior to the arrest Detective Ballantine had J.W. engage in a controlled call to Burns. During the call, J.W. told Burns that she had some brandy, was planning to get drunk, and wanted to take some pictures like before. J.W. noted that she did not have sex with anyone before and was not going to do so this time, either. Burns initially ignored her and told her to tell her mother that he would come over later to pick-up something. Nevertheless, J.W. continued to push about the photographs, so Burns eventually told her that he would check with some other people to see if they wanted to do the photographs.

**B. Corruption of a Minor.**

{¶11} J.W. relayed that Burns had sexual conduct with her in at least three specific locations when she was fourteen in support of three counts of Corruption of a Minor in violation of R.C. 2907.04(A). In one instance, Burns engaged in sexual conduct with her at the University Inn hotel on her birthday. J.W. and Burns also engaged in sexual conduct at a location known as Staddens Bridge and in Burns' home. Multiple other witnesses confirmed J.W.'s testimony and Burns' sexual behavior toward J.W.

{¶12} The former owner of the University Inn, Praven Patel, confirmed that he had personally checked in a "Robert Burns" on November 3, 1998.

{¶13} Roseberry testified that she had viewed Burns sucking on J.W.'s breast the night she was present in Burns' bedroom. Faye was present with Burns in the bedroom once and recalled Burns requesting J.W. take her shirt off.

{¶14} J.W. did not report these allegations to the police until March 1999. J.W. claimed she was frightened because Burns had made comments that if he were caught, he would leave and make sure no was able to speak about the incidents. J.W. provided the police with some Polaroid pictures of her nude that she claimed Burns had taken.

{¶15} J.W. admitted at trial that she did not tell the police everything at once, but gave them bits of information at a time. J.W. gave the police three handwritten statements, on March 17, 1999, May 6, 1999, and June 17, 1999. J.W. never mentioned the Staddens Bridge incident in any of her statements. In her second statement, J.W. noted the University Inn incident, but merely claimed that she had sex with O'Neal, not Burns. J.W.'s statement indicated that she did not know if she had sex with Burns because she blacked out. J.W.'s statement also indicated that she could not recall the date of the University Inn incident, even though she subsequently claimed that it occurred on her birthday.

## C. Corruption of a Minor with Drugs.

{¶16} Burns was also charged with two counts of corruption of a minor with drugs in violation of R.C. 2925.02. Burns had regularly furnished J.W. with Valium, marijuana and alcohol during the time he knew her. The Valium was kept in a headboard cabinet in his bedroom in a prescription bottle. Faye confirmed that a Valium prescription was present in the headboard and that marijuana was regularly in the house. Timothy Elliget, a criminalist with the City of Newark Police Department

photographed Burns' headboard during execution of the search warrant and observed an empty prescription bottle of Valium. By the time of trial, several items of evidence were lost by the police and were not available for use at trial. This included the empty Valium bottle, the Polaroid camera, and the computer web cam.

**{¶17}** The jury found Burns not guilty of Count 7, Corrupting Another with Drugs (Valium) in violation of R.C. 2925.04(A)(4)(a), a felony of the second degree. The jury found Burns guilty of Count 8 Corrupting Another with Drugs (Marijuana) in violation of R.C. 2925.02(A)(4), a felony of the fourth degree.

**D. Verdict and Sentence.**

**{¶18}** Burn's was found guilty on all counts except Count 7. Burns was sentenced to three years for each count of illegal use of a minor, fifteen months for each count of corrupting a minor, and six months for the sole count of corrupting another with drugs. Each count was set to run consecutively, for a total term of thirteen years and three months. Additionally, Burns was classified as a sexually oriented offender, with an annual registration requirement for ten years.

**ASSIGNMENT OF ERROR**

**{¶19}** Burns raises one assignment of error,

**{¶20}** "I. THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHT TO A FAIR TRIAL BY PERMITTING THE PROSECUTOR TO READ ALOUD SUBSTANTIAL PORTIONS OF TESTIMONY FROM A PRIOR JUVENILE COURT PROCEEDING FOR THE PURPOSE OF REFRESHING A WITNESS'S RECOLLECTION IN VIOLATION OF THE RULES OF EVIDENCE."

ANALYSIS

**{¶21}** Burns argues that his due process rights were violated when the state read portions of his son's prior testimony under the guise of refreshing his recollection.

**{¶22}** In the case at bar, the state filed a notice of its intent to use prior testimony of Burns' son from a 1999 juvenile custody proceeding. In that proceeding O'Neal testified concerning J.W.'s accusations during a dependency proceeding in which Burns was a party.

**{¶23}** On April 18, 2012, the state filed an "Application for a Material Witness" warrant for O'Neal. The affidavit submitted in support of the application indicated that O'Neal was avoiding service of a subpoena to testify during Burns' trial. The trial court granted the application.

**{¶24}** On April 20, 2012 the state gave a "Notice of Intention to use Prior Transcript." The state gave notice that it would use O'Neal's testimony from the juvenile court case should O'Neal persist in refusing to testify.

**{¶25}** The day before O'Neal was to take the stand, the prosecutor alerted the court that O'Neal claimed he was unable to remember anything. (1T. at 212). The court recognized that there was an issue as to whether Burns had the same motive to develop O'Neal's testimony during the dependency case and asked the parties to research that issue for the next day. The next day, the prosecutor noted that they had some off-the-record discussions about the use of the transcript, but they did not know what O'Neal would do, so they would deal with that when he testified.

**{¶26}** O'Neal appeared for trial and when called to the stand answered a series of initial questions, which O'Neal answered with no difficulty. However, when the

prosecutor asked O'Neil about J.W., O'Neil stated he could not remember having a relationship with her. He further could not recall whether J.W. had been to the home. O'Neal further could not recall testifying in 1999.

{¶27} The state, at the direction of the Court, then directly asked O'Neal if his prior answers regarding witnessing sex between Burns and Woods, having knowledge that Burns gave Woods drugs, and Burns taking nude photographs were truthful. O'Neal claimed no recollection of either his prior testimony nor could he determine if any of that testimony was truthful or a lie. The questions posed to O'Neal were taken directly from the prior juvenile court transcript and O'Neal's responses during the 1999 juvenile court proceeding.

{¶28} Defense counsel objected once at the beginning of this examination, arguing that the prosecutor could not impeach his own witness and could only ask if the transcript refreshed O'Neal's recollection. The court overruled the objection.

{¶29} In *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, the Supreme Court reaffirmed the longstanding test for appellate review of the admission of evidence:

> Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court. E.g., *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. An appellate court, which reviews the trial court's

admission or exclusion of evidence, must limit its review to whether the lower court abused its discretion. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233, 1237. As this court has noted many times, the term 'abuse of discretion' connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily or unconscionably. E.g., *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

**{¶30}** A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby. *State v. Maurer*, 15 Ohio St.3d 239, 264, 473 N.E.2d 768(1984). The trial court must determine whether the probative value of the evidence or testimony is substantially outweighed by the danger of unfair prejudice or of confusing or misleading the jury. See *State v. Lyles*, 42 Ohio St.3d 98, 537 N.E.2d 221(1989).

**{¶31}** In the case at bar, O'Neal's prior statement was admissible as substantive evidence. When a witness is "unavailable" to testify at trial, Evid. R. 804 permits the witness' testimony in a different proceeding to be admissible,

**(B)Hearsay exceptions**

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

*(1) Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or

proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability.

**{¶32}** Evid. R. 804 defines "unavailability of a witness" to include a witness who testifies to a lack of memory of the subject matter of his or her testimony. Evid.R. 804(A)(3). In the case at bar, O'Neal consistently stated he did not remember the events that had occurred 13 years prior to the present case. He stated that he had been to a psychologist and had suppressed many painful experiences in his life. (2T. at 236). Accordingly, O'Neal was "unavailable."

**{¶33}** Burns contends, however, that he did not have a similar motive to develop his cross-examination in the juvenile court proceeding. He does not dispute that he did cross-examine O'Neal at the prior hearing.

**{¶34}** Burns' contention that the former testimony was not admissible because Burns did not have a similar motive to develop the testimony is rejected. We are unable to review the cross-examination of O'Neal during the juvenile court proceeding because the transcript of his testimony during that proceeding was not filed with the trial court or made a part of the record for purposes of appeal. Therefore, it does not constitute part of the record on appeal. See App.R. 9(A).

"When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to the assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and

affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385(1980). If a partial record does not conclusively support the trial court's decision, it is presumed that the omitted portion provides the necessary support.

*Wozniak v. Wozniak*, 90 Ohio App.3d 400, 409, 629 N.E.2d 500, 506(1993); *In re Adoption of Foster*, 22 Ohio App.3d 129, 131, 489 N.E.2d 1070, 1072-1073(1985).

**{¶35}** Even assuming arguendo the testimony of O'Neal was erroneously admitted by the trial court, we would find the error to be harmless.

**{¶36}** Evid.R. 103(A) provides that error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected and, if the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent.

**{¶37}** "A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E. 2d 996, at ¶ 78, citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). "Whether a Sixth Amendment error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Id., *citing Chapman* at 23 and *State v. Madrigal*, 87 Ohio St.3d 378, 388, 721 N.E.2d 52.

**{¶38}** The testimony of O'Neal was cumulative of the remaining evidence and its probable impact on the mind of an average jury was very little. This is evidenced by the fact that the jury found Burns not guilty of Count 7, Corrupting Another with Drugs

(Valium) in spite of the former testimony that O'Neal had observed Burns give J.W. the drug. (2T. at 242). Further, Burns does not argue in his appeal that the evidence was insufficient on any of the counts upon which the jury returned guilty verdicts. There is sufficient independent evidence of Burns' guilt, which renders the admitted statements harmless, there is no prejudice and reversal is unwarranted. *State v. Moritz* (1980), 63 Ohio St.2d 150, 407 N.E.2d 1268(1980). (Citing *Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 1059(1972)); *State v. Stevenson*, 5th Dist. No. 2005-CA-00011, 2005-Ohio-5216 at ¶ 46.

**{¶39}** Burns' sole assignment of error is overruled in its entirety.

**{¶40}** For the foregoing reasons, the judgment of the Licking County Court of Common Pleas, Ohio, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Farmer, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

WSG:clw 0918                          HON. SHEILA G. FARMER

[Cite as *State v. Burns*, 2012-Ohio-4706.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ROBERT L. BURNS, JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012-CA-37 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas, Ohio, is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER